# STATE OF MICHIGAN

# COURT OF APPEALS

---

WNC HOUSING LP, SHELTER RESOURCES
CORPORATION, and WNC INSTITUTIONAL
TAX CREDIT FUND XVII LP,

UNPUBLISHED
February 23, 2016

Plaintiffs-Appellees/Cross-
Appellants,

v

No. 324249
Wayne Circuit Court
LC No. 12-003812-CH

SHELBORNE DEVELOPMENT COMPANY
LLC, KARLEY SQUARE GP LLC,
SHELBORNE PARK GP LLC, and KATHY S.
MAKINO, a/k/a KATHY S. MAKINO-LEIPSITZ

Defendants-Appellants/Cross-
Appellees.

---

Before: HOEKSTRA, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

Defendants appeal as of right from a September 30, 2014, judgment issued against defendants in favor of plaintiffs. The court awarded $879,426 for the purchase of a debt, $47,400 for an outstanding water bill, $313,9454 for attorney fees, $69,001.56 in statutory interest, and $7,321.78 in costs. The court also awarded case-evaluation sanctions. We affirm in part and reverse and remand in part.

Plaintiffs took action to remove the three corporate defendants in this case (as well as their principal, defendant Kathy Makino) as the general partners of six Limited Dividend Housing Association partnerships. The trial court permitted the removal under the terms of the partnership agreements[1] and awarded various damages and attorney fees[2] related to the

---

[1] The parties agree that the various partnership agreements, and the various guaranty agreements signed by Makino, are materially identical.

[2] Damages and fees were assessed differently against the various defendants in accordance with the various agreements and development projects.

-1-

mishandling of the partnerships by the general partners. Defendants raise several issues on appeal and plaintiffs raise two issues on cross-appeal.

Defendants first argue that the trial court erred in granting partial summary disposition and declarative relief[3] to remove defendants as general partners from the development projects in Detroit.[4] We review de novo a trial court's grant of summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). In evaluating a motion under MCR 2.116(C)(10), "a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden*, 461 Mich at 118.

The trial court found that proper procedures under the partnership agreements had been followed,[5] stating, "they gave [Makino] more time, they provided her with the requisite notice on December 14th, saying here's your letter, cure, we'll have the meeting January 5th, and that's it." The court noted that there was no evidence that "the cures have been made."

The partnership agreements provided for conditions allowing for removal of the general partner in § 13.2. Section 13.2(20)(b) provides that written notice must be provided to the general partner, and the general partner, depending on the reason for removal, must be given a certain period to cure any deficiencies. Section 13.2(20)(b) then states, "the removal shall become effective upon approval of a majority of the Partner's Interest (as specified in Section 10.1 of this Agreement) at a Partner's meeting held in accordance with Section 17.2 of this Agreement."

Defendants do not dispute that removal occurred after a proper meeting on January 5, 2012. The gist of defendants' argument is that because plaintiffs, on November 15, 2011, filed Certificates of Amendment with the state indicating that defendants had been removed as general partners of the Detroit development projects, plaintiff violated the partnership agreement because no partners' meeting had been held before November 15, 2011. The trial court rejected this argument, stating that "the certificates weren't used, and the certificates weren't brought to [Makino's] attention 'til after the Complaint was filed." The court continued, "[the filing] may have been premature, but I don't think that it . . . poses any clear prejudice because of the fact

---

[3] The court initially granted partial summary disposition and a trial was held with regard to further matters.

[4] An order relating to a development project in Battle Creek is not at issue.

[5] The trial court made an exception to its ruling with regard to a particular project called "Midtown." The court ruled that with respect to the Midtown project, it would issue a declaratory judgment for "proper and appropriate removal of the General Partner . . . subject to the current General Partner being replaced with an entity approved in writing by the City of Detroit, within thirty days." Subsequently, after trial, the court authorized the removal of the General Partner with respect to the Midtown project.

that she didn't have notice of these certificates, and everyone was operating under the, the guess that she was gonna continue until and after the vote was held January 5th. But she was put on notice December the 14th, of 2011." The court stated that if there was any breach of the partnership agreements because of the filing of the certificates, it was not a material one.

Defendants are correct that MCL 449.1206(6) states that a filed partnership document is "effective at the time it is endorsed unless a subsequent effective time, not later than 90 days after the date of delivery, is set forth in the document." However, defendants *do not dispute* that, disregarding what they themselves characterize as the "*premature filing* of these Certificates," the removal was conducted properly, in accordance with the terms of the partnership agreements. This Court enforces clear contractual language as written, *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003), and the procedures under the contracts were indeed followed.

Essentially, defendants' appellate argument favors form over substance. The "premature filing" of the certificates had no practical, substantive effect, given that, as the trial court noted, "everyone was operating" under the assumption that the status quo (with Makino as the principal) would hold until the vote on January 5, 2012. Indeed, defendants point to no action taken in reliance upon the prematurely filed certificates. The trial court did not err in its ruling, given the proper procedures employed by plaintiffs.

Defendants take issue with the removal of Shelborne Development as general partner for the Midtown project (see footnote 1, *supra*) because Detroit had not approved of the proposed replacement. However, the partnership agreements did not specify that Detroit's approval was needed to effect the removal of the general partner. The trial court had earlier referred to the need for Detroit's approval because of a loan agreement made in connection with the Midtown project that required Detroit's consent for removal of the general partner. As noted by the trial court, "the only involvement by the City of Detroit is relative to the loan." The trial court was made aware that the new general partner, plaintiff Shelter Resources Corporation, had provided certain requested information to Detroit regarding its qualifications as a general partner but had not heard back from Detroit. The trial court stated:

> The fact of the matter remains, relative to this issue, the . . . [c]ourt did ask to have the City of Detroit's input into this.
>
> And it's my understanding, and it hasn't been controverted, that the only involvement by the City of Detroit is relative to the loan.
>
> The City of Detroit has stated its position, and nevertheless, the [c]ourt, as it's heard all the evidence in this matter, is of the opinion that this entity alone, the other entities would be better served if a new General Contractor [sic] is put in place, so that we can ensure that the organization, and the property, continues to be managed without any deficits, or potential problems.
>
> And that being said, the [c]ourt is going to confirm the removal of the . . . General . . . Partner, and allow Shelter Resources to step in as the new General Partner, on this matter.

The simple fact is that this case involves the partnership agreements, not the loan agreement, and the partnership agreements did not require Detroit's approval for removal of a general partner. As noted by defendants, "[t]he requirements of the loan agreement presented an entirely separate and distinct issue . . . ." Moreover, to the extent that defendant may be arguing that the trial court controverted its earlier order conditioning removal on Detroit's approval of the new general partner, we note that a trial court has the power to amend an order before rendering final judgment. MCR 2.604(A). Under all the circumstances, we find no basis for reversal.

Defendants contend that "removal of Shelborne as general partner without the City's prior consent, or the replacement of Shelborne with an entity that has not been approved in writing in advance by the City constitutes a clear act of default under Midtown's Loan Documents with the City." Defendants, citing §§ 9.5(h) and 9.12(v) of the partnership agreement, state that "[c]ausing the Partnership to default on its loan with the City is a violation of the Partnership Agreement." However, these sections specifically deal with the duties of the general partner. It cannot be said that the court's order in this case is an action by the general partner such that §§ 9.5(h) and 9.12(v) are applicable.

Defendants next argue that the trial court erred in finding Makino individually liable, jointly and severally, "with Defendant Shelborne Park GP for the amount relating to the debt purchase . . .,[6] and . . . with Shelborne Development for the amounts relating to the outstanding Detroit water bill."[7] The trial court, after trial, held Makino liable "[a]s the Guarantor," further noting that "at the point . . . when these debts were incurred, Miss Makino was . . . in charge of the businesses . . . ."

We review for clear error a trial court's findings of fact in a bench trial. *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). We review de novo the interpretation of a contract. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

Makino signed guaranty agreements that stated, in § 1, that she "individually, jointly and severally guarantees to the Partnership and the Limited Partnership, as applicable, the prompt payment and full performance of the provisions under Section 6.2, Section 6.3, Section 7.4(a), Section 7.4(b), Section 7.4(c), Section 7.4(e), and Section 9.12 of the Partnership Agreement . . . ." Defendants contend that only § 6.3 is applicable here, and that Makino is not individually liable under this section because it applies only "[f]rom the date the first apartment unit in the Apartment Housing is available for its intended use until 3 consecutive months of Breakeven

---

[6] A mortgage loan for a project at "Shelborne Park" was in default because of the general partner's failure to make loan payments; to avoid foreclosure, plaintiffs purchased the debt at a negotiated price.

[7] The trial court only awarded plaintiffs the portion of the outstanding water bill that plaintiffs had paid and declined to award the amount still owing. We address this discrepancy *infra*, in connection with plaintiffs' cross-appeal.

Operations . . . ."  Defendants contend that because it is uncontested that the projects reached "Breakeven Operations" years ago, Makino cannot be held individually liable.

Section 6.2 of the partnership agreement states that the general partner "hereby guarantees lien free Completion of Construction of the Apartment Housing on or before March 1, 2004 . . . at a total development cost of not more than $8,253,073 . . ., which includes all hard and soft costs incident to the acquisition, development and construction of the Apartment Housing in accordance with the Development Budget, the Construction Contract, and Project Documents. David Shaffer,[8] the executive vice president of WNC Associates, Inc., the general partner of plaintiff WNC Housing LP, testified that "cost over runs" related to the acquisition of property fall within the ambit of § 6.2. The debt purchase (discussed more fully herein) thus falls within this section and the trial court did not clearly err in holding Makino individually liable for it.

With regard to the water bill, Shaffer testified that the water bill "started with construction, and went through a couple of years until it was determined by the Water Department that it hadn't been paid." He indicated that the entirety of the water bill in dispute "goes back to the date of construction, and when the property was placed in service." He indicated that, therefore, the water bill fell within § 6.2 or § 6.3 of the partnership agreement and was covered by the guaranty. Makino testified that the water bill covered five or six years. Plaintiffs contend that Shaffer's testimony was sufficient to uphold the trial court's ruling that Makino was individually liable for the water bill. However, plaintiffs do not adequately address the fact that Shaffer testified that the water bill related not only to construction (i.e., § 6.2), but also to "when the property was placed in service." If the basis for liability is not § 6.2 but § 6.3, then Makino is not liable if the bill pertained to a period following three consecutive months of "Breakeven Operations." Makino testified that "break even operations" occurred with regard to all the projects at issue and that it usually occurred "within six to nine months after construction completion." Section § 6.3 does also provide for the general partner to loan money for a period ending "three years following the achievement of three consecutive months of Breakeven Operations," but plaintiffs do not argue about "loans" either in their appellee brief or their brief on cross-appeal, which also deals with the water bill. Given the testimony and the way the parties frame their arguments, we cannot find a sufficient basis for holding Makino individually liable for the water bill.

Defendants contend that the trial court also erred in finding Makino individually liable for case-evaluation sanctions. This contention is without merit because the guaranty agreement provides, in § 2:

> Guarantor further agrees to pay all expenses paid or incurred by the Partnership and/or Limited Partner in endeavoring to collect Guarantor's obligations, or any part thereof, and in enforcing the provisions of this

---

[8] This name is alternately spelled "Shafer" at times.

Agreement, *including reasonable attorneys' fees if collected or enforced by law or through an attorney-at-law.*  [Emphasis added.]

Defendants next contend that the trial court erred in finding, after the bench trial, that plaintiffs should be awarded $897,426 in damages relating to the purchase of the outstanding debt for Shelborne Park.  The trial court ruled:

the Shelborne Park property was approaching foreclosure, and . . . the Limited Partner[s] had to go in and bail it out, in order to, to save their interest that they had put into the properties.

Grant it, it was at a discounted basis, but the Court feels that that was the straw that broke the camel's back, that brought everything to a head, whereby the Limited Partners had to finally ask the General Partner to . . . step down . . . .

* * *

And WNC did purchase that loan, to keep it from going into foreclosure.

That being said, Miss Makino, as Guarantor, is responsible for the amount that was expended by the Limited Partners . . . to cure the outstanding debt to prevent foreclosure on that property.

Defendants contend that Shelborne Park GP should not have been jointly and severally liable for these damages because plaintiffs' decision to purchase the debt was made after Shelborne Park GP's removal as general partner.  This argument is unpersuasive because § 13.3 of the partnership agreement states that "[t]he Withdrawing General Partner shall be and shall remain . . . liable as a General Partner for all liabilities and obligations incurred by the Partnership or by the General Partner prior to the effective date of the Withdrawal, or which may arise upon such Withdrawal."[9]  As noted above, under § 6.2 of the partnership agreement, the general partner is responsible for costs associated with the acquisition of property.  The debt purchase was made specifically to avoid foreclosure because of the failure to properly service a mortgage loan, and pertinent actions relating to the debt purchase were ongoing at the time of the withdrawal.  As such, it was reasonable for the trial court to conclude that the debt purchase fell within the "liabilities and obligations incurred by the Partnership or by the General Partner prior to the effective date of the Withdrawal, or which may arise upon such Withdrawal . . . ."  We find no clear error.

Defendants also contend that the full amount of the debt purchase was not an appropriate measure of damages because it eliminated the debt for less than the amount of the principal previously owed.  The trial court addressed this issue by stating, "even though it was indicated that they may have gotten a windfall, they shouldn't have had to pay this at all, in order to keep the business afloat.  And what happened was, there were non-payments because we've got to the

---

[9] We note that the partnership agreement makes reference to an "Involuntary Withdrawal."

point where there was a potential for foreclosure, and the, the debt became due." Again, we find no clear error. Indeed, the general partner was responsible for payments related to the acquisition of property, and the general partner defaulted on this obligation; therefore, it was proper for the trial court to award the amount plaintiffs were required to pay in order to cure the default.

Defendants next argue that the trial court erred in awarding $42,185 in case-evaluation sanctions. We review de novo a trial court's ruling regarding case-evaluation sanctions. *Meyer v City of Center Line*, 242 Mich App 560, 577; 619 NW2d 182 (2000).

Defendants contend that case-evaluation sanctions were not applicable because plaintiffs received $313,955 as reasonable attorney fees under the terms of the partnership agreements providing for attorney fees. Defendants contend that also awarding case-evaluation sanctions amounted to disallowed "double-dipping." See, e.g. *Rafferty v Markovitz*, 461 Mich 265, 272-273; 602 NW2d 467 (1999).

Defendants' argument is not persuasive. The $313,955 in prior attorney fees related to actions through February 2014. Indeed, at a hearing on September 19, 2014, defendants' attorney acknowledged that plaintiffs had presented proofs at trial "relating to attorneys' fees, through February." Defendant's request for case-evaluation sanctions covered attorneys' fees incurred after the rejection of the case-evaluation award in May 2014. No "double-dipping" is apparent.

Defendants also contend that case-evaluation sanctions were inappropriate based on *Kusmierz v Schmitt*, 477 Mich 934, 934; 723 NW2d 833 (2006), in which the Supreme Court stated:

> Because the parties stipulated to a lump sum case evaluation award, there was no "amount of the evaluation . . . as to . . . particular pair[s] of parties" for purposes of MCR 2.403(O)(4)(a). Without such an amount, the court cannot compare the verdict to the case evaluation award for each pair of parties as required by the court rules, and the court cannot determine whether either party received a more favorable verdict. Therefore, neither party is entitled to case evaluation sanctions. Plaintiffs are directed to reimburse defendants for the case evaluation sanctions that have already been paid.

MCR 2.403(O)(4) states, in part:

> In cases involving multiple parties, the following rules apply:
>
> (a) Except as provided in subrule (O)(4)(b), in determining whether the verdict is more favorable to a party than the case evaluation, the court shall consider only the amount of the evaluation and verdict as to the particular pair of parties, rather than the aggregate evaluation or verdict as to all parties. However, costs may not be imposed on a plaintiff who obtains an aggregate verdict more favorable to the plaintiff than the aggregate evaluation.

-7-

(b) If the verdict against more than one defendant is based on their joint and several liability, *the plaintiff may not recover costs unless the verdict is more favorable to the plaintiff than the total case evaluation as to those defendants*, and a defendant may not recover costs unless the verdict is more favorable to that defendant than the case evaluation as to that defendant. [Emphasis added.]

Defendants contend that because the trial court awarded specific judgment amounts against specific defendants, and because the case-evaluation award was one lump sum, case-evaluation sanctions were not appropriate. Defendants' argument is unpersuasive. The case-evaluation award was $225,000, against Karley Square GP, Shelborne Development, Shelborne Park GP, and Kathy Makino. Plaintiffs accepted the case evaluation and defendants rejected it. The trial court subsequently awarded case-evaluation sanctions only against Shelborne Park GP and Kathy Makino, jointly and severally. Even a cursory glance at the judgment shows that, with respect to those defendants, the verdict for plaintiffs is more favorable than the case-evaluation award, even when the entire $225,000 is used as the comparison amount.

Defendants next argue that the trial court erred in awarding, as costs, $300 for case-evaluation fees paid to the case-evaluation administrator and $5,950 in hourly fees paid to the facilitative mediator. This issue involves court-rule interpretation, which we review de novo. *Haliw v City of Sterling Heights*, 471 Mich 700, 704; 691 NW2d 753 (2005). Plaintiffs concede on appeal that the $300 should not have been assessed.

With regard to the mediator fees, MCR 2.411(D)(4) states, "The mediator's fee is deemed a cost of the action, and the court may make an appropriate order to enforce the payment of the fee." In addition, MCR 2.625(A) states that "[c]osts will be allowed to the prevailing party in an action . . . ." Finally, MCL 600.2405(2) states that "[m]atters specially made taxable elsewhere in the statutes or rules" "may be taxed and awarded as costs." The trial court did not err in awarding the fees as costs.

Defendants next argue that the trial court erred in failing to disqualify plaintiffs' counsel's law firm, the Fraser firm. Defendants contend that the firm violated MRPC 1.12(c) because Ingham[10] Circuit Judge Paula Manderfield originally presided over the case and subsequently retired and became a member of the Fraser firm. "We review the factual question of the existence of a conflict of interest that disqualifies counsel for clear error, but review de novo the application of 'ethical norms' to a decision whether to disqualify counsel." *Lamont Comm Church v Lamont Christian Reformed Church*, 285 Mich App 602, 613; 777 NW2d 15 (2009).

The trial court noted that Manderfield joined the firm in February 2013 and the court was informed in May 2013 that she had "acted on this case." The court found, based on submitted affidavits, that although the notice was not "prompt," a "firewall" with regard to the case had

---

[10] The case was removed to Wayne Circuit Court.

been set up from the time Manderfield joined the firm; the court thus denied defendants' motion for disqualification.

MPRC 1.12(c) states:

> (c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter, unless:
>
> (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>
> (2) written notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.

Manderfield submitted an affidavit dated May 22, 2013, indicating that she was a "contract shareholder" at the Fraser firm and "no part of the fees received by the . . . firm from Plaintiffs in this matter are apportioned to [her]." She further stated that she had been "screened from any participation in [the] case" since she started employment with the firm," does "not know where the physical case file . . . is located," and has "no ability to access any part of the electronic case file . . . ." The president of the Fraser firm also submitted an affidavit, dated June 26, 2013, indicating that Manderfield had been fully "screened" from the case since she started with the firm and that this screening would continue. He noted that the lawyers working on the case know and have known since her hiring not to discuss any aspect of the case with or in the presence of Manderfield.

Even accepting the trial court's conclusion that the notice provided was not "prompt," we decline to find that this absence of promptness, in itself, requires us to reverse in this case. In fact, as noted by plaintiffs, MCR 2.613(A) states:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

As noted in *Kubiak v Hurr*, 143 Mich App 465, 471; 372 NW2d 341 (1985), "The party seeking disqualification bears the burden of demonstrating specifically how and as to what issues in the case the likelihood of prejudice will result." Given the detailed affidavits submitted, we find no error with respect to the trial court's ruling.

On cross-appeal, plaintiffs argue that the trial court erred in awarding, after the bench trial, only $47,400 for the Detroit water bill, which was the amount that plaintiffs had paid toward the total amount owing of approximately $158,000. Plaintiffs argue that the trial court should have awarded an additional $110,728 for the remaining amount due. The trial court found that this amount should be paid by the new general partner.

First, as discussed above, there was insufficient evidence to hold Makino personally liable for the water bill under her guaranty. However, we agree with plaintiffs that the total amount due for the water bill should have been assessed against Shelborne Development. Defendants contend that this amount was not an obligation of the general partner because, under the partnership agreement, a sufficient time had passed since "Breakeven Operations" such that the general partner was no longer liable for partnership operating costs. However, § 9.10 of the agreement states that "[t]he General Partner or Affiliates of the General Partner shall pay all Partnership expenses which are not permitted to be reimbursed pursuant to Section 9.9 . . . ." Section 9.9(b)(2) indicates that there will be no reimbursement to the general partner for the payment of "utilities." The water bill was clearly a utility and thus was an obligation of Shelborne Development.

Plaintiffs next argue that the trial court erred after the bench trial in declining to award $111,064 for unpaid property taxes relating to the Midtown property. The trial court ruled that this amount would be paid by the new general partner "because it's unpaid at this point in time." However, this tax bill represented taxes past due and owing because of the general partner's failure to pay them. Under § § 8.2 and 9.7(h) of the partnership agreement, the general partner was responsible for making tax payments. Accordingly, the trial court should have held Shelborne Development liable for the entire tax bill.[11]

We affirms in all respects with the exception of the following: (1) we reverse with respect to the award of $300 for case-evaluation fees, (2) we reverse with respect to holding Makino individually liable for the water bill, (3) we hold that Shelborne Development is liable for the full amount of the water bill, and (4) we hold that Shelborne Development is liable for the unpaid taxes pertaining to the Midtown project.

Affirmed in part, reversed in part, and remanded for entry of an amended judgment in accordance with this opinion. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Michael J. Kelly

---

[11] Plaintiffs do not claim that Makino was individually liable for the taxes.